Opinion issued June 16, 2026



In The

# Court of Appeals

For The

# First District of Texas

—————————————

NO. 01-24-00492-CV

—————————————

**HIEN NGUYEN, Appellant**

**V.**

**LISA LE, SEIU LE, AND NANCY TRAN, Appellees**

On Appeal from the 412th District Court
Brazoria County, Texas
Trial Court Case No. 78763-CV

## MEMORANDUM OPINION

This case involves a contract to buy part of a shrimping boat called the Lucky Nikki. Plaintiff Hien Nguyen said that he made a deal to buy a half interest in the boat. Nguyen never spoke to the owner Lisa Le, but he spoke to her father, Seiu Le. Lisa's father denied agreeing to sell anything. Instead, he characterized their deal

not as an agreement for sale of goods, but rather as a standard split of profits from shrimping trips, whereby the profits get divided between the owner and the crew.

Making things murkier, any deal between Nguyen and Lisa's father was purely oral. Their conversation apparently occurred in Vietnamese at the Le home. Nguyen, although born in Vietnam, is Cambodian and went to school in Cambodia, so he speaks Vietnamese but does not read or write it. He added: "We absolutely never use any English in our dealings."

The jurors must have found Nguyen's version of events persuasive, because they went his way on all three questions, answering roughly as follows:

1. Nguyen entered into an oral contract with (a) Lisa's father, but not with (b) Lisa's mother or (c) Lisa.

2. The oral contract was breached by (a) Lisa's father, (b) Lisa's mother, and (c) Lisa.

3. The breach of the oral contract caused $151,595 in damages.

The court set aside the verdict and rendered a take-nothing judgment.

On appeal, Nguyen presents two issues: (1) whether the trial court erred in granting JNOV on his contract claim; and (2) whether the trial court erred in directing a verdict on his fraud claim. We conclude that the evidence supports the finding that Nguyen made an oral agreement, but it does not support any of the damages required by Question 3 or fraud. We affirm.

## Background

The preceding discussion sums up the basic factual dispute about the oral deal to buy a half interest in Lisa Le's boat, so this narrative can begin with the lawsuit. In his pleadings, Nguyen alleged two pertinent causes of action:

(1)    breach of an oral contract for the sale of goods, and

(2)    fraud in promising to form a partnership with him.

His pleadings contained more claims, but none of those made it to trial.

For the breach of contract claim, Nguyen alleged that he and the three defendants "entered into a contract whereby Defendants would sell Plaintiff half of the Lucky Nikki and split evenly the profits made from shrimping on the Lucky Nikki in exchange for Plaintiff paying Defendants $100,000." For fraud, he alleged that the defendants "falsely represented to Plaintiff that they would form a partnership and evenly share the profits from shrimping with the Lucky Nikki." With allegations of an oral agreement to sell goods valued at more than $500, one might expect the defendants' answer to mention the statute of frauds, and in fact it does. But the statute does not seem to have resurfaced ever again.

At trial, the two sides laid out their competing versions of the facts during voir dire and opening statements. During plaintiff's opening, counsel indicated that the evidence would show an agreement about a partnership and ownership of 50% of the shrimping vessel:

This is a story of what [the] Le family did. Dad made a deal. Mom executed the deal. All in the name of the daughter [Lisa Le]. Mr. Le, sitting over there, invited a fellow shrimping ship owner who is in the business, owns other ships, Mr. Nguyen, to his home. And evidence will show that they talked about partnership and they agreed, reached an agreement on the partnership. They agreed that, one, the shrimping boat, the value is $200,000. And if Mr. Nguyen pays half of that, hundred thousand dollars, then he will get 50 percent ownership of the shrimping boat. The name of the shrimping boat is called LUCKY NIKKI.

Defense counsel's opening statement offered a different version of what the evidence would show:

The basis of his claims is that there was some sort of agreement between him and somebody, somebody to buy half of Lisa's boat. Now there is no evidence, and you'll hear testimony that it actually never happened. The Plaintiff has never actually spoken a word to Lisa, the owner of the boat. They have never met. They have never spoken. So there was no agreement between them. Okay?

During the trial, Nguyen agreed that he never spoke to the boat's actual owner, Lisa Le, but he stated that he did speak to her father, Seiu Le. This exchange during Nguyen's testimony gives a sense of the story:

Q.   You never spoke to the owner, did you, sir?

A.   No. I didn't know who she was, the owner. He only—Mr. Seiu Le only pointed at the LUCKY NIKKI and he claimed that that was his boat. I didn't know who was the owner.

By the end of the testimony, both sides had agreed that Nguyen never had any conversations with Lisa.

4

When the parties closed, the court directed a verdict against the fraud claim, but it let the contract claim go to the jury. The three questions in the charge ask about contract formation, breach, and damages. Unfortunately, the first two answers conflict inasmuch as they find Lisa and her mother to have breached a contract that they never made. Start with the formation question:

> QUESTION NO. 1:
>
> Did Plaintiff and any of the following Defendants enter into an oral contract for the sale and purchase of one-half ownership interest in the vessel *LUCKY NIKKI*?
>
> Answer "Yes" or "No"
>
> (a)    [Seiu] Le
>
> ANSWER: <u>Yes</u>
>
> (b)    Nancy Tran
>
> ANSWER: <u>No</u>
>
> (c)    Lisa Le
>
> ANSWER: <u>No</u>

With the benefit of hindsight, it might have been preferable to condition the breach question so as to have the jury answer only as to any defendant who it found to have entered into an oral contract. That way, there would be no need to consider a breach inquiry as to Nancy Tran or Lisa Le. But the jury found as follows:

> QUESTION NO. 2:
>
> Did any of the following Defendants breach the oral contract with Plaintiff for the sale and purchase of one-half ownership interest in the vessel *LUCKY NIKKI* and/or fail to comply with any of the material obligations under the oral contract?

5

Answer "Yes" or "No"

(a)    [Seiu] Le

ANSWER: <u>Yes</u>

(b)    Nancy Tran

ANSWER: <u>Yes</u>

(c)    Lisa Le

ANSWER: <u>Yes</u>

Hence, the jury went on to answer Question 3, which asked about ensuing damages. As we will discuss in more detail later, the jury found damages of $151,595.

Neither side asked the court to send the jurors back in light of the tension between the No answers and the Yes answers. Instead, after the jury had gone home, the defendants moved for JNOV based on insufficiency of the evidence. The court granted the JNOV motion and signed a take-nothing judgment.

This appeal followed.

## Analysis

The two sides agree that the standard of review for legal sufficiency points comes from *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). We therefore need not rehash the rules laid out there. Where the two sides part company is over how those rules apply to this factual record.

## I.    Breach of Oral Contract Claim

The tension between the answers to Questions 1 and 2 gives us some pause. It is difficult to see how Lisa and her mother could have broken a promise that they never made.  Were it necessary to address that issue, we would need to grapple with the consequences of the fact that nobody asked the court to send the jurors back to resolve the conflict.

But the liability aspects of the verdict come to nothing if the damage finding lacks support in the evidence.  The instructions to Question 3 provide for the following measure of damages:

> In determining the amount of damages, if any, to be awarded for the breach of the oral contract, you may consider the following elements of damages, if any, and none other:
>
> (1)    The difference, if any, in the value of the oral contract as it was performed and the value it would have had if it had performed as promised.
>
> (2)    Reasonable and necessary expenses incurred in attempting to mitigate the damages caused by the breach.

This two-pronged measure of damages does not track the measure in the UCC for a buyer's remedies in a case involving the sale of goods.  *See* TEX. BUS. & COM. CODE §§ 2.712, 2.713.

But the time to complain about any deviation was at the charge conference, and the parties seem contented to live with the measure found in the charge, so a sufficiency analysis on appeal must live with it as well.  Guided by this non-UCC

7

measure, the jury was then asked to quantify the damages. Here is the language from Question 3:

QUESTION NO. 3:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate the Plaintiff for damages, if any, that were proximately caused by the breach of the oral contract?

Do not add any amount for interest on damages, if any.

Answer in dollars and cents for damages, if any:

ANSWER: $151,595.00

Nothing in the record establishes any damages in keeping with the two-pronged measure found in the jury charge. The first prong deals with "value of the oral contract" as agreed and as performed, but no evidence casts any light on the value of the contract. Literally nobody mentioned the "value of the oral contract," whether as agreed or as performed. A few mentions were made about the value of the shrimp boat, but the jury charge did not ask about that.

This fact pattern resembles the one in *Bankcard Processing International, L.L.C. v. United Business Services, L.P.*, No. 01-10-01079-CV, 2012 WL 3776024 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, pet. denied) (mem. op.). There the damage question submitted a measure built on the "value" of a business: "'Benefit of the bargain' means the difference, if any, between the value of [plaintiff's] business after the individuals or entities committed the wrongful acts against

[plaintiff], and the value of [plaintiff's] business if the individuals or entities had not committed such wrongful acts[.]" *Id.* at *3.

The plaintiff in *Bankcard* had evidence of damages, but not the kind of damages required by the jury charge:

Q.   Now, with all these numbers you have been talking about you came [up] with between 2.6 and $3.2 million in damages, right?

A.   For the future profit component, yes.

Q.   And you came up with that by valuing a hypothetical joint venture, right?

A.   Yes.

Q.   Okay. You did not value and didn't try to value the Plaintiff in this case, UBS Limited Partnership, did you?

A.   I was not asked to do that.

Q.   You weren't asked to and you didn't?

A.   That is correct.

*Id.* at *4. We concluded that the "testimony does not support any amount of damages as measured by the instructions submitted to the jury, which is the standard we use to evaluate the sufficiency of the evidence." *Id.* at *5. "No evidence supports the damages awarded in this case as measured against the jury instruction." *Id.* at *6.

Here the charge used a value measure, so there needed to be proof of value as called for by the instructions. None exists. The jury's finding of damages therefore cannot stand. *Id.*; *see also Kiewit Tex. Mining Co. v. Inglish*, 865 S.W.2d 240, 245

9

(Tex. App.—Waco 1993, writ denied) ("The face value of a contract is ordinarily different than the value of its expected performance[.]").

The second damage prong in the jury charge deals with expenses incurred in trying to mitigate the breach, but no evidence casts any light on that, either. The record contains literally nothing to establish damage under either prong. For these reasons, the trial court ruled correctly in granting a JNOV on the contract claim.

We overrule Nguyen's first issue.

## II. Fraud Claim

We turn to the fraud claim. Nguyen alleged: "Defendants falsely represented to Plaintiff that they would form a partnership and evenly share the profits from shrimping with the Lucky Nikki." "Defendants had no intention of entering into a partnership with Plaintiff and knew as much when they made the aforementioned representation to Plaintiff."

A common-law fraud claim requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (quoting *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994) (per curiam)). Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but

involves a promise of future performance made with no intention of performing at the time it was made. *Id.* at 48.

Thus, the cause of action requires evidence of a material misrepresentation, made with knowledge of its falsity (or without knowledge of its truth), and made with intent that the misrepresentation be acted on. "Such a claim requires, among other things, proof that the defendant knew the representation was false when made and intended to induce the plaintiff's detrimental reliance on it." *Roxo Energy Co., LLC v. Baxsto, LLC*, 713 S.W.3d 404, 412 (Tex. 2025) (per curiam).

As the winner of the verdict, Nguyen has a right to his version of the facts about the misrepresentation. He agreed that Lisa's father was the only defendant who arguably made any representation to him, so the directed verdict was plainly proper as to fraud liability on the part of Lisa and her mother. Nguyen testified in these terms about the talk with Lisa's father:

> Q. Okay. And during these three meetings were you able to come to an agreement with Mr. Seiu Le?
>
> A. Well, yes. That Mr. Seiu Le agreed to have a relationship with me, a partnership with me.
>
> Q. Okay. Could you describe the terms of the partnership agreement that you've entered with Mr. Seiu Le?
>
> A. The partnership that is, you know, the value of the boat. It was 200,000.

Later on in his direct testimony, Nguyen added to his account with the following:

11

A.    . . . You know, one person told me that it's a partnership and one person just, you know, she and her daughter just took all the money.

Q.    When you say one person told you it was partnership, being Seiu Le. Is that right?

A.    Yes.

Having reviewed all the evidence, we cannot find probative evidence that would foreclose the granting of a directed verdict. Nothing in the record shows a material misrepresentation, made with the requisite knowledge of falsity and intent to induce reliance. Accordingly, the directed verdict "on this tenuous and vague theory of liability was proper." *Id.*

We overrule Nguyen's second issue.

## Conclusion

We affirm the trial court's judgment.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

Justice Gunn, concurring.

12